FILED
2013 Feb-28  PM 12:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

|  |  |  |
|---|---|---|
| **SHANNON R. ALEXANDER,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 6:11-CV-03417-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **COMMISSIONER OF SOCIAL** | } | |
| **SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Shannon R. Alexander brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking review of the decision by the Commissioner of the Social Security Administration denying his applications for Disability Insurance Benefits and Supplemental Security Income. Based upon this court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be reversed and remanded.

## I.      Proceedings Below

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act") on September 4, 2007. (Tr. 84, 86, 141). Plaintiff claims a disability onset date of March 1, 2000 due to right knee osteoarthritis, peroneal nerve disorder effecting his right knee, pes anserinus bursitis, hamstring tendonitis, depression, and anxiety. (Tr. 141, 146). Plaintiff's applications were initially denied by the Commissioner on November 27, 2007. (Tr. 84-90). Plaintiff then requested and received a hearing before Administrative Law Judge ("ALJ") Patrick R. Digby on August 14, 2009. (Tr. 46-83, 93-94). In his September 28, 2009 decision, the ALJ determined Plaintiff was not disabled within the

meaning of the Act, and thus not eligible for DIB or SSI benefits. (Tr. 37). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 22, 2011, that decision became the final decision of the Commissioner. (Tr. 1). Accordingly, it is now a proper subject of this court's appellate review. 42 U.S.C. §§ 405(g), 1383(c).

At the time of the hearing, Plaintiff was 32 years old and testified that he had earned a high school diploma. (Tr. 69). Plaintiff claims that he last engaged in substantial gainful activity as a homebuilder from January to February 2000. (Tr. 157). Prior to that, Plaintiff worked in oil and gas drilling, delivery and stocking at an office supply company, and as a cook at a restaurant. (*Id.*). Plaintiff indicated in his application for benefits that he attempted to work at home remodeling in September 2003, landscaping in September 2005, and maintenance at a resort in May 2006 after his alleged onset date of disability; however, he claims that he has been unable to maintain any substantial employment after his alleged disability onset date of March 1, 2000, due to his condition. (Tr. 72, 157).

On March 4, 2000, Plaintiff fell between floor joists and injured his right knee. (Tr. 185-96). Plaintiff was treated by Dr. Erich Wouters, who diagnosed Plaintiff with a peroneal nerve injury. Dr. Wouters treated Plaintiff for this injury for approximately one year. Plaintiff frequently complained of pain and was prescribed various pain relief medications, such as Celebrex, Vicoprofen, Lortab, and Neurotin. (*Id.*). On September 26, 2000, after experiencing no improvement, Plaintiff elected to undergo peroneal nerve decompression surgery in an effort to alleviate his pain. (Tr. 183). During a follow-up visit on October 5, 2000, Dr. Wouters reported that Plaintiff's knee was healing well. (Tr. 193). Dr. Wouters released Plaintiff to return to light work on November 2, 2000. (Tr. 194). On November 30, 2000, Dr. Wouters noted, "[Plaintiff] appears

2

to be doing better and has returned to work." (*Id.*).  At the hearing, however, Plaintiff testified that he attempted to return to work after his surgery, but was unable to do so.  (Tr. 55).  Plaintiff further testified that he believed his 2000 surgery actually worsened his condition, resulting in greater pain that diminished his ability to work.  (Tr. 59-60).

Plaintiff's medical records indicate he returned to see Dr. Wouters on March 1, 2001 with complaints of unresolved knee pain.  (Tr. 194).  Dr. Wouters prescribed Lortab and ordered an MRI of Plaintiff's knee, the results of which were unremarkable.  (Tr. 194-95).  Dr. Wouters encouraged Plaintiff to consult with a pain specialist to determine if anything further could be done for his condition; however, Plaintiff did not receive medical treatment again until 2006, when he fell on wet stairs injuring his right knee ACL.  (Tr. 57, 195).  On March 17, 2006, Plaintiff underwent right knee ACL reconstructive surgery performed by Dr. Gary Russell.  (Tr. 201).  Following this knee surgery, records indicate that Plaintiff repeatedly reported to the emergency room beginning in February 2006 through April 2007 with complaints of knee pain.  (Tr. 223-55).

Plaintiff began to see Dr. Charles Cross shortly after his ACL surgery for treatment of his knee pain.  (Tr. 263-88).  Dr. Cross continued to treat Plaintiff through the date of the hearing and submitted a written report to the ALJ answering questions posed by Plaintiff's prior counsel regarding Plaintiff's condition and limitations.  (Tr. 388).  Likewise, Dr. Russell also continued to treat Plaintiff for his knee injuries through the date of the hearing and beyond.  (*See* Tr. 361-82).  Plaintiff was prescribed pain medications and received multiple Supartz injections for his knee pain.  (Tr. 257).  Additionally, on July 23, 2009, Dr. Russell performed another peroneal nerve decompression surgery on Plaintiff's knee — three weeks prior to the hearing.  (Tr. 361).

On November 19, 2007, Dr. Marlin D. Gill, an examining physician, conducted a disability examination of Plaintiff for the Commissioner. (Tr. 290). Dr. Gill noted that Plaintiff complained of severe pain dating back to his original surgery. (*Id.*). Dr. Gill also noted that while Plaintiff claimed Dr. Russell indicated he would eventually need a knee replacement, an MRI of Plaintiff's knee from March 9, 2007 made mention of ACL repair, but stated "no significant degenerative joint disease." (*Id.*). Dr. Gill remarked Plaintiff was able to take care of basic needs, feed his dog, and do some house chores. (*Id.*). Furthermore, Dr. Gill noted that Plaintiff was able to walk around the room with little difficulty without his self-prescribed cane. (Tr. 291).

## II.    The ALJ's Decision

Claimants under DIB and SSI must prove "disability" within the meaning of the Act. 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). The law and regulations governing claims for DIB and SSI are identical. Therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). A person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "Substantial gainful activity" is work that involves significant physical or mental activities done for pay or profit. 20 C.F.R. § 404.1572. A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

4

The Commissioner employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits:

1.      Is the claimant performing substantial gainful activity?
2.      Does the claimant have an impairment or a combination of impairments that is severe?
3.      Does the claimant's severe impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
4.      Can the claimant perform past relevant work?
5.      Based on the claimant's age, education, and work experience, can the claimant perform other work within the national economy?

20 C.F.R. §§ 404.1520, 416.920.  The burden of proof rests squarely on a claimant through step four in the process.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  If a claimant meets his burden through step four, the burden then shifts to the Commissioner at step five.  *Id.* at 1241 n.10.  However, before performing the fourth and fifth steps, the ALJ must determine the claimant's residual functional capacity ("RFC").  *Phillips* at 1237-39.  A claimant's RFC is the most the claimant is able to do despite his impairments and is based on all relevant medical and other evidence.  *Id.* at 1238.  It can contain both exertional and nonexertional limitations.  *Id.* at 1242-43.

If a claimant is unable to perform his previous work, the Commissioner must show there are a significant number of jobs in the national economy that the claimant can perform.  *Id.* at 1239.  This determination is based on the claimant's RFC, age, education, and work experience.  *Id.*  The ALJ can either use the Medical Vocational Guidelines ("the Grids") or hear testimony from a vocational expert ("VE") in making this determination. *Id.* at 1239-40.

The ALJ found that Plaintiff had the severe impairments of right knee peroneal nerve entrapment, post surgery and bursitis; however, the ALJ determined that Plaintiff's impairments did

not meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(Tr. 31-32).

The ALJ determined that Plaintiff had the following RFC:

> occasionally can lift and carry 20 pounds and frequently can lift and carry 10 pounds. He must have the option to sit or stand at will. He can walk approximately 20 yards, stand for 30 minutes, and sit for one hour, alternating all three across an eight-hour workday. He occasionally can operate foot controls. He occasionally can climb ramps and stairs; balance; stoop; kneel; and crouch. He cannot work on ladders, ropes, or scaffolds. He should avoid concentrated exposure to vibration and extreme cold. He cannot work with exposure to unprotected heights or dangerous machinery.

(Tr. 32-33).  In making this determination, the ALJ found Plaintiff's allegations of disabling knee pain and dysfunction were not credible to the extent they were inconsistent with the above RFC.  (Tr. 33).  The ALJ noted that records from Plaintiff's treating physicians showed that his condition had improved in March 2001. (*Id.*).  The ALJ also noted that Plaintiff failed to seek medical treatment from 2001 until 2006.  (*Id.*).

The ALJ did not accept the opinion of Plaintiff's treating physician, Dr. Cross, who submitted documentation regarding Plaintiff's condition.  (Tr. 35).  The ALJ indicated that he gave substantial weight to Dr. Gill, the disability examiner who observed Plaintiff's condition for the Commissioner.  (*Id.*).  The ALJ noted that Dr. Gill's report indicated that Plaintiff engages in daily activities such as driving short distances, going to the store, and caring for his personal needs.  (*Id.*).  The ALJ further noted that Plaintiff had income in 2003 and 2005 and "the fact that [Plaintiff] was working and not reporting income serves to lessen his credibility."  (*Id.*).  At this step, the ALJ concluded that Plaintiff was unable to return to his past relevant work.  (*Id.*).

In the final step of the analysis, step five, the ALJ determined that considering Plaintiff's age, education, work experience, RFC, and testimony from a vocation expert ("VE"), there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 36). Thus, the ALJ ruled Plaintiff was not disabled as defined by the Act and, therefore, not entitled to DIB or SSI benefits. (Tr. 37).

## III.   Plaintiff's Argument for Remand or Reversal

Plaintiff presents two arguments that his case should be reversed: (1) the ALJ failed to apply the proper legal standards and to state adequate reasons for rejecting the testimony of his treating physician, Dr. Cross (Pl.'s Mem. at 11); and (2) the ALJ failed to properly apply the Eleventh Circuit's pain standard. (Pl.'s Mem. at 18). The court will address each of these arguments in turn.

## IV.   Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, "even if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

7

V.     **Discussion**

    A.     **The ALJ's Decision to Reject the Medical Opinion of Plaintiff's Treating Physician is Not Supported by Substantial Evidence**

Plaintiff first argues that the ALJ failed to show "good cause" for rejecting the medical opinion of his treating physician, Dr. Cross.  (Pl.'s Mem. at 11).  After reviewing the record, this court agrees.

The relevant Social Security Regulation states, in part:

> **Treatment relationship**. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as *consultative examinations* or brief hospitalization

20 C.F.R. § 404.1527(c)(2) (emphasis added).  The regulation further states, "Generally, the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight we will give to the source's medical opinion." § 404.1527(c)(2)(ii). Medical opinions include "statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [] physical or mental restrictions." 20 C.F.R. § 404.1527.  Such medical opinions may take the form of a physician's treatment notes.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

In the Eleventh Circuit, of course:

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians substantial or considerable weight. Good cause exists when the: (1) treating physician's opinion was not bolstered by

> the evidence; (2) evidence supported a contrary finding; or (3)
> treating physician's opinion was conclusory or inconsistent with the
> doctor's own medical records.

*Id.* at 1179 (citations omitted). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The record indicates that Dr. Cross became one of Plaintiff's treating physicians beginning in April 2006 and continuing through the date of the hearing. (Tr. 282, 390). Dr. Cross submitted medical opinion evidence prior to the hearing and noted the following about Plaintiff: suffers from chronic severe pain syndrome and COPD/asthma; can't walk or stand without pain; suffers severe, chronic pain; would have to miss more than two days of work each month as a result of his condition; was totally disabled at that time; and he (Dr. Cross) recommended Plaintiff for disability benefits. (Tr. 388-89). Attached to this document were Dr. Cross's treatment notes covering over twenty of Plaintiff's appointments from November 7, 2007 through July 16, 2009. (Tr. 390-413). In addition, the record contains notes from (approximately) twenty of Dr. Cross's prior appointments with Plaintiff. (Tr. 264-82).

Despite this submission, the ALJ's discussion of Dr. Cross's opinion was limited to the following paragraph:

> The undersigned does not accept the comment or opinion of Dr.
> Cross who recommended that [Plaintiff] receive Social Security
> disability benefits. The opinion that [Plaintiff] should receive
> benefits is an assessment of [Plaintiff]'s ability to perform work,
> which is an opinion of an issue reserved (sic) the Commissioner. As
> a result, it is not entitled to any special significance. Further, (sic)
> opinion of Dr. Cross that [Plaintiff] would miss two or more days a
> month due to pain is inconsistent with the medical evidence of record
> and [Plaintiff]'s activities of daily living. The opinion is not

consistent or supported by his treatment notes, nor is it consistent with the remainder of the medical evidence of record. Such an opinion is based upon no objective basis nor was any rationale provided. [Plaintiff] is not working and such an opinion is pure speculation on the possibility of a future limitation.

(Tr. 35) (citations omitted).

The ALJ is correct that certain of Dr. Cross's comments – those indicating that Plaintiff is disabled and recommending him for disability benefits – are entitled to no weight. Nevertheless, other opinions expressed by Dr. Cross were due to be considered. Moreover, while Dr. Cross certainly could have been more articulate, his opinions regarding Plaintiff's chronic severe pain syndrome – *i.e.*, that he experiences severe, chronic pain, and cannot walk or stand without pain (*see* Tr. 264-88) – were entitled to substantial weight absent a showing of good cause. To that end, the court notes that despite owing a duty to give substantial weight to these opinions, the ALJ failed to discuss or even mention Dr. Cross's relevant opinions regarding these matters.

Furthermore, the ALJ noted that he gave "substantial weight" to Dr. Gill, the disability examiner, and cited to specific references from his report. (Tr. 35). Again, the court notes that the regulations specifically state that more weight is given to "opinions from [] treating sources, since these sources. . . may bring a *unique perspective* to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as *consultative examinations*." 20 C.F.R. § 404.1527(c)(2) (emphases added). Unlike the disability examiner, who saw Plaintiff on one occasion, Plaintiff has maintained a long term treating relationship with Dr. Cross, dating back to April 2006. (Tr. 282). As Dr. Cross's medical opinion was only discussed in the one paragraph noted above and the ALJ's decision does not contain a

sufficient reason for this, the court must conclude that the ALJ erroneously gave greater weight to Dr. Gill's report.

Finally, regarding the sole portion of Dr. Cross's opinion that was discussed by the ALJ – that Plaintiff would miss two or more days a month of work due to his condition – the ALJ drew broad (and unsupported) conclusions that Dr. Cross's opinion is not buttressed by medical records or his treating notes.  As the ALJ failed to articulate any reasoning for this conclusion, the court is unable to properly understand and review this finding.

In sum, the court finds the ALJ failed to show "good cause" for rejecting the medical opinion of Dr. Cross.  The record indicates that the ALJ gave weight to the examiner's report over Plaintiff's treating physician without providing adequate reasoning for this decision. As such, the ALJ's decision is not supported by substantial evidence and is due to be reversed and remanded.

**B.    The ALJ's Decision Discrediting Plaintiff's Subjective Pain Testimony is Not Supported by Substantial Evidence**

Plaintiff next contends that the ALJ misapplied the pain standard in rejecting his complaints of disabling pain.  After a careful review of the record, the court again agrees.  In this jurisdiction, to establish disability based upon pain, it is necessary to show:

> evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). "If a claimant testifies as to subjective complaints of disabling pain," and the ALJ decides not to credit such testimony, the ALJ "must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations." *Dyer v.*

*Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Failure to articulate reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Holt*, 921 F.2d at 1223.

In this case, the ALJ determined that Plaintiff failed to meet part two of the pain standard. (Tr. 33). The ALJ found that Plaintiff's subjective testimony of disabling pain was not credible to the extent it was inconsistent with Plaintiff's RFC assessment. (Tr. 33). The court has located three references in the ALJ's opinion wherein he made findings or conclusions that have bearing on Plaintiff's credibility. The court is, however, unable to say these reasons constitute explicit and adequate reasoning for discrediting Plaintiff's testimony.

First, the ALJ noted that Plaintiff's "allegations are inconsistent with [his] daily living activities." (Tr. 34). The ALJ specifically noted that Dr. Gill's report shows Plaintiff "last worked in April 2007 as a landscape laborer and [he] drives for short distances, goes to the store, and cares for his personal needs." (Tr. 35). However, the court notes it is well established in this Circuit that ordinary, daily activities do not necessarily disqualify a claimant from receiving Social Security benefits. *Lewis*, 125 F.3d at 1441. Furthermore, regarding Plaintiff's April 2007 work, Dr. Gill's report also noted that, "[Plaintiff] says he tried to do [the landscape] job for about a month but could not tolerate it." (Tr. 290). This second sentence was also not cited by the ALJ; however, short-term attempts at work also do not disqualify a claimant.

Second, the ALJ noted that "the long gap of no medical treatment by [Plaintiff] from September 2000 to February 2006 certainly is an inference that any pain [he] suffered *is* not disabling." (Tr. 35) (emphasis added). That is certainly the case. However, the ALJ failed to

account for the numerous medical records submitted by Plaintiff from 2006 through the date of the hearing, including the nearly forty individual records of Dr. Cross, previously discussed.

The court finds the ALJ failed to articulate explicit and adequate reasoning for rejecting Plaintiff's testimony of disabling pain. For this reason, the court cannot conclude that the ALJ's decision is based upon substantial evidence and accordingly it is due to be reversed and remanded.[1]

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence.  Specifically, the court finds that the ALJ failed to articulate "good cause" for discrediting Plaintiff's treating physician and that the ALJ failed to state explicit and adequate reasoning for discrediting Plaintiff's subjective complaints of pain.  Therefore, the Commissioner's final decision is due to be reversed and remanded.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____28th_____ day of February, 2013.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[1]In addition, the ALJ's rationale for concluding that Plaintiff's work history and non-reporting of income had substantial bearing upon his credibility is unclear.  These statements of the ALJ would seem to more logically fit into an analysis of step one and two of the disability process. The court notes the ALJ, of course, could have determined Plaintiff engaged in substantial gainful activity after March 1, 2000, or that Plaintiff's onset date was considerably later than claimed.  *See Moncrief v. Astrue*, 300 F. App'x 879, 880-81 (11th Cir. 2008) ("Although a claimant's alleged onset date is the starting point for determining the disability onset date, the ALJ need not adopt that date if it is unsupported by the medical evidence.").